**Dated: September 18, 2006**

**The following is ORDERED:**



_____
Tom R. Cornish
UNITED STATES BANKRUPTCY JUDGE

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

IN RE:

**KAY DON GOSS**,                                      Case No. 05-70378
                                                       Chapter 7

                    Debtor.

### ORDER REGARDING EXEMPTIONS

On the 26th day of June, 2006, there came on for hearing Objections to Debtor's Claim

of Exemptions and Amended Claim of Exemptions filed by Creditors Todd and Misty Bowles'

("the Bowles"). The Bowles appeared personally and were represented by Clifton Naifeh and D.

Craig Shew. The Debtor was present and was represented by D. Neal Martin. Gerald Miller,

Chapter 7 Trustee ("Trustee"), also appeared. After hearing and reviewing the evidence and

testimony presented by the parties, as well as the arguments of counsel, the Court hereby enters

its findings of fact and conclusions of law, in conformity with Rule 7052, Fed. R. Bankr. P., in

this core proceeding.

## I.  FINDINGS OF FACT

Creditor Todd Bowles suffered a head injury while he was employed by Debtor Kay Don Goss and his son, Steven Goss.[1]  Mr. Bowles and his wife filed suit in Seminole County, Oklahoma against Debtor, Debtor's son and various business entities, primarily alleging fraud in the procurement of a settlement agreement.[2]   The Bowles were awarded a judgment in excess of $ 700,000.[3]  Debtor commenced this Chapter 7 bankruptcy on February 4, 2005.  He claimed several exemptions that Creditors Todd and Misty Bowles object to, specifically: 1) a safe; 2) tools of the trade used in his cattle business; 3) an eight-year old milk cow; and 4) his beneficiary interest in the Hurshel H. Goss Trust ("the H. H. Goss Trust").

Debtor's ex-wife, Dorothy Goss, testified regarding the safe in the home she formerly occupied when married to the Debtor.  Shortly before she filed for divorce sometime in the late 1990's, she inquired of Debtor as to the contents of the safe and was told that there was no money left in it.  Suspecting that there were items of value in the safe, she attempted to locate the combination but discovered that the combination had been removed from where she had hidden it.  She was unable to open it to confirm her husband's statement that there was nothing in the safe.  Shortly after that, the parties began divorce proceedings.

The Debtor testified that the safe is of commercial grade and similar to one he used in his former business, Goss Feed Store.  He purchased the safe in 1984 or 1985, and attached it to a

---

[1]Steven Goss also filed a Chapter 7 proceeding on the same day, Case No. 05-70374.

[2]Case No. S-CJ-01-127, Seminole County District Court, filed August 30, 2001.  The jury verdict forms are dated February 4, 2005.

[3]This Court has previously ruled in an  adversary proceeding filed by the Bowles, Case No. 05-7089, that this judgment is excepted from discharge.

2

wall in the garage of his home.  It  formerly contained cash and jewelry, but has nothing in it currently.  Debtor's home is located in the city of Maud, Oklahoma.

Mr. Lee Bolen, a cattle rancher, testified regarding cattle sales he has made on behalf of the Debtor.  He testified that he  purchased approximately twelve to fifteen head of cattle at auction at the direction of the Debtor.  He did not recall buying any cattle after February of 2005 after the Debtor filed for bankruptcy. The Debtor paid him for these cattle with checks written on a trust account.  He has never sold any cattle for the Debtor or the trust.  He did not believe that any of the cattle he has purchased at the direction of the Debtor were jersey cows.  When presented with a photograph of the cow that the Debtor is seeking to exempt as a milk cow, Mr. Bolen testified that he did not believe the cow looked like a milk cow.  He thought the cow might be an Angus crossbreed, and possibly part Hereford.  He also stated that a female Angus cow can be milked.

The Debtor testified that he has been in the farming and cattle ranching business for many years.  He testified that his original bankruptcy schedules listed him as retired, and he did not include the eight-year old jersey cow and her calf on his schedules because he just forgot about her and her calf.  He admitted that he told the jury in the Bowles v. Goss state court trial that he had not owned any cattle since 2000.  He also admitted that he testified under oath at his 341 meeting that he did not own any cattle.  He remembered this cow sometime after that meeting, amended his schedules to claim the cow as an exemption, and to amend his occupation to include ranching and farming.   He has no records indicating the date of purchase of the cow but believes she was purchased in 1996, 1997 or 1998.  He grazes the cow with the cows owned by his father's trust.  He originally bought her for slaughter, but she calved before she could be

3

slaughtered so he kept her. Currently, she is owned for breeding purposes. He has sold one of her calves. This cow and calf are the only cattle he owns personally. He has never milked the cow. The Debtor believes the cow to be a Jersey milk cow because of her ears and horn structure.

The Debtor testified that, upon the advice of his attorneys, he did not prepare income tax returns for 2000 through 2004 until after he filed bankruptcy. He did not respond when asked by the Court whether he did this to avoid having evidence of income to present to the jury in his fraud trial. His 2000, 2003 and 2004 returns indicate a loss of income, and his 2001 and 2002 returns indicate $0 in farm income. He admitted that he sold trust cattle at a livestock auction in January of 2004 and that he kept the sale proceeds for himself. He stated that he sold cattle he owned personally throughout 2004. He also admitted that he had not done a good job of keeping records regarding his ownership of cattle. He further admitted that he failed to abide by a Seminole District Court Order requiring that proceeds from the sale of personal property as well as property of his feed store and tire repair business be kept in an escrow account. He used those proceeds to pay personal bills and to pay his attorneys who then paid other bills on his behalf.

The Debtor testified extensively regarding the H. H. Goss trust. He is a beneficiary of this trust, as well as the sole trustee. The other beneficiaries are his deceased brother's three children. The trust was created by his father in 1990. A copy of this trust provided to the Court did not bear the signature of the trust's settlor, Mr. H. H. Goss, however, two amendments attached to the original trust do contain his signature, and the Debtor stated that he was present when his father signed the original trust document. Exhibit A to the trust is a list of mineral interests that were to be transferred to this trust. There is some doubt as to which, if any, of

4

these mineral interests were actually transferred to the trust. The Debtor testified that, currently, the trust owns mineral interests and cattle, and receives royalties on the mineral interests, but that he has not made a list of the assets owned by the trust. Debtor estimates that the trust has approximately $21,000 in its bank account.

The Debtor's deceased mother, Crystal Goss, had a trust similar to his father's. She predeceased her husband. Debtor valued her estate at $400,000 and stated that it was larger than his father's. Her estate was not probated, but her trust poured over into his father's trust on her death. H. H. Goss died 1999. The Debtor is also the personal representative of his father's estate. He filed a probate action in Seminole County approximately four years after his father's death. The probate is still pending.

Debtor testified that he has distributed approximately $150,000 in trust assets to his brother's children. He has used certificates of deposit owned by the trust to pay debts of Goss Feed and Tire Repair. This was intended to be a loan to him that was to be repaid to the trust, but he stated that there is no written documentation of this arrangement. He also arranged for the trust to purchase an equipment note of Goss Feed. He stated that he has used money from the trust for his own personal debts and the debts of his businesses. He also stated that this money was owed to him by the trust as part of his beneficiary interest. He used these trust assets to pay off a loan related to the feed store and tire repair business, then executed a mortgage on his personal property to himself as trustee of the H. H. Goss trust. This mortgage was backdated from December of 2004 to October of 2004. Creditors have provided copies of trust bank account records to the Court listing numerous withdrawals of cash from the trust checking account by the Debtor. The purpose of these withdrawals was not further documented or

5

explained by the Debtor. According to the Debtor, he has received more in trust distributions than the other beneficiaries; therefore, instead of being entitled to trust assets, he still owes the trust money. However, he could not identify for the Court what he used the cash for, nor has he provided an accounting of the trust's financial activities to the other beneficiaries.

Mr. Ralph Zeller, attorney and C.P.A., testified regarding the specific terms of the H. H. Goss Trust. Since the early 1990's, Mr. Zeller's practice has been limited to estate planning, probate, wills, trusts, and partnership law. He serves as an attorney to the Debtor and the Debtor's family, and provided some legal assistance to the Debtor regarding the claims of Creditor Todd Bowles. Mr. Zeller testified that, upon the death of H. H. Goss, the trustee of the H.H. Goss Trust was to make certain distributions to the beneficiaries, then distribute the remainder of the trust property into two equal sub-trusts. One sub-trust was for the children of the settlor's deceased son (brother of the Debtor), while the other sub-trust was for the Debtor Kay Don Goss. According to paragraph 4.06(c)(1) of the trust document, these distributions of trust principal and income were to be made by the trustee "as soon as it is administratively practical" after the death of the settlor, H. H. Goss.

In Mr. Zeller's opinion, the H. H. Goss trust is a valid trust. He did not believe that the terms of the trust require that it be terminated and its assets distributed within six months after H. H. Goss' death. Instead, it is Mr. Zeller's opinion that it is within the trustee's, Kay Don Goss's, discretion to determine when to distribute trust assets and close the trust, subject to other trust provisions and his fiduciary duties as trustee. Mr. Zeller did not know which mineral interests had actually been conveyed by H. H. Goss into the trust. However, once the estate is probated, any mineral interests not previously transferred into the trust would pour over into the trust

6

according to the terms of H. H. Goss' will. Mr. Zeller was not aware that the Debtor has already made partial distributions to all beneficiaries of the trust. The trust does include a spendthrift clause that was to restrict a creditor's ability to reach a beneficiary's interest in the trust. Mr. Zeller has never prepared any tax documents regarding trust distributions to the beneficiaries. He refused to express an opinion regarding the Debtor's performance of his duties as trustee and was unsure of whether anyone would have standing to remove the Debtor as trustee. He did, however, agree that the terms of the trust provide that its assets should be distributed as soon as possible after the death of the settlor, but believes the exact timing is within the trustee's discretion.

As for the probate of H. H. Goss' estate, Mr. Zeller testified that no inventory has been filed nor is one required. He did acknowledge that this probate has lasted longer than all but two other probates he has handled. In his opinion, the probate has not been processed in a reasonable or timely manner and should have been completed by now. He stated that the delay is due to the Debtor's failure to provide certain information and the filing of this bankruptcy.

<u>CONCLUSIONS OF LAW</u>

Initially, even exempt property is "property of the estate." It is only returned to the debtor upon a valid claim of exemption. *In re Weeks*, 106 B.R. 257 (Bankr. E.D. Okla. 1989). The purpose of exemptions is to assist the debtor in a "fresh start" and to provide support for the debtor and his family. This Court will address each claimed exemption and objection separately.

<u>1. Home safe.</u>

The Debtor claims an exemption for his home safe as a household good, pursuant to Okla. Stat. tit. 31, § 1(A)(3). To qualify for an exemption under this subsection, the Debtor must

Case 05-70378    Doc 186    Filed 09/18/06    Entered 09/18/06 15:57:53    Desc Main
Document      Page 7 of 16

show that the safe is held "primarily for the personal, family, educational or household use of such person or a dependent of such person . . . ." Debtor argues that a home safe is necessary in today's world. However, the safe that he seeks to exempt appears to be a large, commercial-style safe that would be used in a business. Although Debtor may be correct in asserting that today's families need a safe place to keep important documents, the safe in question is beyond what is reasonably necessary for the maintenance of Debtor's household. *See, In re Davis*, 134 B.R. 34 (Bankr. W.D. Okla. 1991). Accordingly, the Bowles' objection to this exemption is granted.

2. Jersey cow and calf.

Okla. Stat. tit. 31, § 1(A)(10) allows an exemption for up to five milk cows and their calves less than six months old held primarily for the personal, family or household use of a person or his dependents. A Hereford cow bred for meat was not found to be exempt under this statute even though the cow was physically capable of giving milk and had actually been milked. *In re Luckinbill*, 163 B.R. 856 (W.D. Okla. 1994). There was no evidence that the debtor held the cows primarily for personal, family or household use, therefore the cow was not exempt property of the debtor. In this case, Mr. Bolen testified that he did not believe the cow in question was a milk cow, nor did he believe her to be a pure bred jersey cow. The Debtor admitted that he purchased the cow for slaughter and that he had never milked her. The Debtor also admitted that he was breeding her rather than using her as a milk cow. The Court does not believe the Debtor has provided sufficient evidence that this cow and calf are owned "primarily for personal, family or household use," therefore, the Bowles' objection to exemption is granted.

3.  Tools of the trade.

        The Debtor gave conflicting testimony regarding his activities over the last several years.
He claims to be retired, but also claims to be a farmer and rancher.  To qualify for an exemption
under Oklahoma law for tools of the trade, Okla. Stat. tit. 31, § 1(A)(5), a debtor must establish:
1) a trade or profession; and 2) that the item is necessary for the debtor to continue in that trade
of profession.  *In re Mackey*, 209 B.R. 251 (Bankr. E.D. Okla. 1997)(citations omitted).  The
Debtor originally listed himself as "retired" on his bankruptcy schedules, and he testified at his
341 meeting and in his 2004 examination that he was retired.  Subsequently, he amended his
schedules to state that he is a rancher and farmer, and to include an eight year old jersey cow,
and its calf.  He stated that he last sold cows owned by him personally in 2004, prior to the filing
of this bankruptcy.  It is this Court's determination that the Debtor is no longer actively working
in the business of cattle ranching and is therefore unable to exempt the claimed tools.  Caring for
but one cow and calf that he keeps with trust cows or his son's cows is insufficient to establish a
trade or profession.  Further, it was not clear from his testimony whether he actually cares for the
any cattle, whether his own or owned by the trust.  He hired Mr. Bolen to purchase cattle for the
trust, then personally sold some of those cattle.  However, the Debtor  did not establish that he is
regularly engaged in the business cattle ranching.  Instead, he testified in at least two other court
proceedings under oath, both pre and post bankruptcy, that he is retired.   Additionally, Debtor's
Schedule I lists no income from the operation of his business, profession or farm.  Although
profitability is not essential to the  establishment of a trade or profession, the purpose of the
exemptions is to provide support to the Debtor and his family;  therefore, profitability is a
consideration in establishing the right to an exemption under this section.  *See, In re Cass*, 104

9

B.R. 382, 387 (Bankr. N.D. Okla. 1989).   It appears to this Court that cattle ranching is not the source of Debtor's support, that his activities related to cattle ranching are very minimal, and that those activities are more in the nature of a hobby than a business.  *Id.*  Accordingly, this Court grants the Bowles' objection to the Debtor's tools of the trade exemption.

4. Beneficiary interest in H. H. Goss Trust.

The beneficial interest in a spendthrift trust that is enforceable under applicable state law is not included in the bankruptcy estate, unless special circumstances are present that invalidate that spendthrift provision. 11 U.S.C. § 541(c)(2).  The H. H. Goss Trust, on its face,  includes a valid spendthrift provision in paragraph 6.04:

> No interest of any beneficiary of any trust created herein, either in income or in principal, shall be subject to pledge, assignment, sale or transfer, in any manner, nor shall any beneficiary have power in any manner to anticipate, charge or encumber his interest either in income or in principal, nor shall such interest of any beneficiary be liable or subject in any manner while in the possession of the Trustee, for the debts, contracts, liabilities, engagements or torts of such beneficiary.  Provided, however, that nothing contained herein shall prevent a trust beneficiary from assigning all or any portion of his or her right to income in the trust created for such beneficiary, to or for the benefit of the issue of such beneficiary or to the spouse of the issue of such beneficiary.

Okla. Stat. tit. 60, § 175.25 specifically approves the inclusion of a provision in a trust that restricts the transfer of a beneficiary's interest in the income of the trust.  Oklahoma limits the amount of trust  income a beneficiary may keep from creditors to $25,000 per calendar year. The Debtor argues, therefore, that because of the spendthrift clause in his father's trust, he may exempt up to $25,000 in income from the trust each year.  The issues before this Court, then, are whether the spendthrift provision validly excludes Debtor's beneficiary interest from being property of the estate under 11 U.S.C. § 541(c)(2), and if it is property of the estate, is he entitled to an exemption of that interest.

Case 05-70378   Doc 186   Filed 09/18/06   Entered 09/18/06 15:57:53   Desc Main
Document      Page 10 of 16

The Bowles object to this exemption for the reason that the Debtor has not complied with the terms of the trust and his duty as trustee to terminate the trust shortly after his father's death in 1999.  His failure to do so, they claim, is due to his intent to hide assets from his creditors, and from the Bowles in particular.  They argue that he has disregarded the specific provisions of the trust requiring him to terminate the trust and distribute the assets, and has treated the trust as his own property.  They seek this Court's help in preventing the Debtor from continuing to shield assets that he most certainly will receive once probate of his father's estate is completed.  They also argue that, in ignoring the express provisions of the trust, the Debtor has breached his duties as trustee, justifying the inclusion of his beneficiary interest as property of the estate.  Debtor responds by arguing that any action regarding the trust would adversely affect the interests of the non-debtor beneficiaries, and would need to be brought in an adversary proceeding or in state district court.  He also argues that the terms of the trust are ambiguous regarding distribution and termination, that he is following the intent of his father to keep the mineral interests together and delaying the distribution of trust assets, and that his delay of seven and one half years in distributing the assets of the trust is a reasonable and valid exercise of his discretion as trustee.

As the only trustee, the Debtor has sole discretion to determine when to terminate the trust and make distributions to beneficiaries.  However, this decision is strictly limited by the terms of the trust.  Paragraph 4.06(c)(1) clearly specifies when the assets of the trust are to be distributed:  "Subject to the provision of paragraph 3.01 hereof, the Trustee **shall** distribute to each beneficiary all principal and accumulated income of his or her respective trust, or share thereof, as soon as it is administratively practical after the division date."  (Emphasis added).  Paragraph 3.01 only allows the trustee to postpone the distribution date following H. H. Goss's

11

death to take advantage of alternate valuation dates provided by state or federal estate tax purposes.  The Debtor has presented no evidence to the Court in support of his position that it is not administratively practical to distribute the principal and any remaining income of this trust. He claims that it was not his father's intent that the minerals be distributed, yet that claim is clearly contrary to the express terms of the trust which direct the trustee to distribute trust property upon the settlor's death.  The trust gives the trustee explicit instructions regarding the timing of the distribution of trust assets, and only allows the trustee discretion regarding the timing of asset distributions to take advantage of certain tax valuation dates.  Debtor provided no evidence that there is some alternative valuation date or other tax advantage that he is waiting for before making final distributions.  Further, Debtor's actions in making partial distributions of trust property indicate that it was  administratively practical to make some distributions to beneficiaries.

The Court believes that Debtor's powers as sole trustee, as well as a beneficiary, when coupled with his actions as trustee, prevent this from being a valid spendthrift clause under nonbankruptcy law, therefore, his beneficiary interest is property of the estate.  *See, In re Orkin*, 170 B.R. 751 (Bankr. D. Mass. 1994) (funds in plan terminable by debtor on 60 days' notice included in estate); *In re Herzig*, 167 B.R. 707 (Bankr. D. Mass. 1994) (debtor's power to amend or terminate the trust destroyed spendthrift aspect of trust and debtor's interest is property of the estate).  This Court does not find ambiguity in the trust provisions. The Court reads the provisions of the trust to require Debtor to have distributed all of the assets and terminated the trust by now.  "A trustee is bound to comply strictly with the terms of the trust and the directions contained in the trust instrument defining his powers and duties." *Hall v. Deal,* 1951 OK 212,

Case 05-70378     Doc 186     Filed 09/18/06     Entered 09/18/06 15:57:53     Desc Main
Document      Page 12 of 16

231 P.2d 384. The Debtor has advanced no valid reason why he has failed to follow the express terms of his father's trust. He has failed to carry out his duties as trustee. In addition, the Court reads the trust as establishing sub-trusts upon H. H. Goss's death and upon the distribution of any of the trust assets to the beneficiaries. The trust provides that the Debtor as trustee was required to transfer his share of the trust to a sub-trust with Debtor as the sole trustee and beneficiary. Once those distributions occurred, the Debtor's sub-trust should have terminated or simply became passive because the legal title and the entire beneficial interest in the sub-trust's property united in one person, the Debtor. *Restatement (Third) of Trusts*, § 69 (2003). Oklahoma law follows this doctrine of merger, whereby the same person cannot be both the sole trustee and the sole beneficiary of the same interest, as a trust will not be found to exist where the legal and beneficial interests are in the same person. *Malone v. Herndon*, 1945 OK 77, 168 P.2d 272, 278. This Debtor has also acted as if he had his own power of appointment as beneficiary of the trust and sub-trust since he decided when and how he, as trustee, should draw funds out of the trust for his own use as the beneficiary. A spendthrift clause is generally considered invalid where the beneficiary has some incidence of ownership of the trust property such as the power to direct the distribution of trust property. *Restatement (Third) of Trusts*, § 58 (2003).

Debtor may not claim this interest as exempt property; therefore, his beneficiary interest is property of the estate. The evidence presented establishes a pattern and practice by this Debtor of disregarding the existence of the trust by commingling assets of the Debtor, his former business, and the trust. Debtor violated restrictions regarding a trustee's actions under Oklahoma law that forbid a trustee from loaning money to or borrowing from its trust, although

13

the trust itself may have allowed that if in the best interest of the trust and all beneficiaries. Okla. Stat. tit. 60, §§ 175.9 and 175.11.  His testimony indicates to this Court that he has treated the trust as his own property by using trust assets to pay personal business debts as well as provide cash to himself.  Debtor's Schedule D includes secured claims by the trust against Debtor's estate of approximately $60,000, and identifies approximately $20,000 in unsecured debt.  The address of H. H. Goss Trust on the creditor's mailing matrix in this case is the same as the Debtor's address.  It has not escaped the Court's notice that the alternate valuation date for estate tax purposes regarding his father's estate was in September of 1999, six months following the settlor's death in March.  Creditor Todd Bowles' work-related injury occurred at the beginning of September, 1999, and the Debtor learned soon after that he owned no insurance that would cover Mr. Bowles' medical expenses.  The Debtor's own testimony and exhibits establish that he freely took assets of the trust for his own benefit, he wrote numerous checks on the trust's checking account to "cash," made many withdrawals from that account without any evidence as to what the cash was to be used for, he wrote checks on the trust account to "Goss Feed" but was not sure what those checks were for, he claims to have made cattle purchases on behalf of the trust while livestock auction records record the purchases in his name only, he admits to selling trust cattle and keeping the proceeds for himself,  he executed a mortgage of $ 50,000 on real estate he owned personally to himself as trustee of the H. H. Goss trust on the eve of his state court jury trial for fraud and back dated the mortgage, he delayed filing the probate action of his father's estate for four and one half years after his father's death, he has failed to facilitate the closing of that probate and the distribution of the assets of that estate to the trust and then to trust beneficiaries, and has failed to provide periodic reports of his administration of the trust to

beneficiaries as required by the terms of the trust. His own attorney testified that the Debtor was responsible for the delay in the closing of the estate. This attorney also testified that, normally, a personal representative of an estate in probate has a fiduciary duty to complete the probate within a reasonable and timely manner, and that this has not been done in this case. What is clear to this Court is that the Debtor is attempting to orchestrate the timing of the distributions of trust property to prevent certain creditors from gaining access to those funds, and he is seeking to use the protections of bankruptcy to facilitate this cause.

"[C]ourts of bankruptcy are essentially courts of equity, and their proceedings inherently proceedings in equity." *Local Loan Co. v. Hunt,* 292 U.S. 234, 240, 54 S. Ct. 695, 697, 78 L. Ed. 1230, 1233 (1934). Debtors are to receive a "fresh start," not a "head start." The fundamental reason for bankruptcy is to equitably distribute the debtor's property for the benefit of creditors - this has been called "the price of discharge." *In re Helmuth,* 92 B.R. 494, 497 (Bankr. N.D. Okla. 1988). This Debtor has treated this trust as his own, determined when he would receive distributions as a beneficiary, and has manipulated the timing of his father's probate and trust distributions to keep these assets from his creditors. The Court believes that the Debtor should not be allowed to abuse the protections of this Court. It is the finding of this Court that the restriction on the transfer of Debtor's beneficiary interest in the H. H. Goss Trust would not be enforceable under nonbankruptcy law because he has failed to abide by the required terms of the trust. He has acted as if he has a general power of appointment as a beneficiary. The trust can provide no spendthrift protection where the legal and beneficial interests in trust property are in the same person. His beneficiary interest in the H. H. Goss trust as well as in the sub-trust created in his own name is property of the bankruptcy estate and is not subject to exemption.

Case 05-70378    Doc 186    Filed 09/18/06    Entered 09/18/06 15:57:53    Desc Main
Document    Page 15 of 16

This Court expresses no opinion regarding the validity of the spendthrift provision as it affects the interests of the other beneficiaries. They are beneficiaries of their own separate sub-trust, and it does not appear that their interests are affected in any way by this Court's decision regarding the Debtor's beneficiary interest in his share of the trust and his sub-trust. This Court's decision is limited to the determination of whether the Debtor's interest in the trust is or is not property of the bankruptcy estate, and whether he is entitled to exempt his beneficiary interest in the H. H. Goss Trust and sub-trust.

<u>CONCLUSION</u>

IT IS THEREFORE ORDERED that the Creditors' objections to Debtor's claim of exemptions are **granted.**

###